May it please the Court. My name is John Belcher. I represent Appellant Rose Johansen. This is an insurance case and the central case for discussion per the order is the State of Code. In this case, the insurance carrier argued and the District Court found that there as insurance premiums had not been paid. There was never a finding by the District Court that the requirement of a premium reminder notice and 30 days advance notice of lapse had been complied with. In fact, the District Court expressly found that under California law, the mere absence of current premiums was enough to automatically terminate the policy. The question is in light of the State of Code, is that good law? And in fact, opposing counsel and American General conceded the rule that in general with insurance policies, California is a strict construction state with respect to notices of cancellation or lapse. But they claimed that there was no statutory or other authority which supported a claim that with respect to life insurance, California is a strict construction state. In the State of Code, the California Court of Appeal interpreted the Walker v. Occidental Life Insurance case which was a California Supreme Court case. And in that case, an employee had a valuable conversion right upon the termination of his employment to continue without having to take a health insurance medical, but he never received notice that he was going to lose that right. And in fact, the carrier never gave him any notice and the employer decided that he was terminated retroactively to April. In evaluating that case, in fact, there was statutory authority that the Court of Appeal in court relied on. Section 15 of the Civil Code provides that stipulations which are necessary are implied in respect to matters concerning which the conduct manifests no contrary intention. Relying on Section 1655 of the Civil Code, the Supreme Court stated that the conversion privilege was a valuable property right which would be of dubious value if the employee were not entitled to notification of an alleged termination of employment. Hence, the court held that a duty of the insurer to give timely notice should be implied in order to make the contract reasonable. So what your argument is that the simple failure to pay premiums standing alone is not enough? That is absolutely correct. And that what is additionally required is notice of potential termination in a grace period? Correct. Had that happened in this case? It did not. Let me finish my question. Had that happened, had the insurance company taken that second step that your argument is is required under California law, who would they have notified? In this particular case, Your Honor, the It would have been Gordon, wouldn't it? Well, you raise a very good point, and I'll tell you who I think they should have notified. What the Who were they required under the terms of the policy to notify of the notice of potential loss during Gordon's lifetime? The express terms of the policy, Your Honor, require that the owner be given notice at his, quote, last known address, which is an undefined period. Isn't that Gordon? Yes. Okay. Correct. So three questions ago, the answer was Gordon. Correct. Under the terms of the policy. But additionally, in terms of the Stewart case, which is one of the lead cases that they cite, by a course of conduct, the parties can set up a requirement that other people be notified. And did that happen here? No. In fact, what happened here is Michael DeFeebo originally sold this policy as an old line policy. And he told Rose Johansson, and it never was disputed, that I am the keeper of your address and that any notices that are sent will also be sent to me. He'd had a 31-year relationship with the Johanssons. And in fact, there's a recent case that came out of the Northern District in March where that exact issue, which is the representations and the course of conduct, that notices would always be sent to the agent, raised a triable issue of fact. And as long as old line had this particular policy under their jurisdiction, that's exactly how it went down. So I agree with Your Honor that under the strict four corners of the policy, it says the owner will be notified. But that doesn't mean that in terms of a course of dealing or in terms of representations that are made by an agent, that in addition to a notification to you, it will also come to me and that this is what you're entitled to under the policy, that those representations are not binding upon the carrier. This was an oral understanding between the individual who sold Gordon Johansson in the policy? This was an oral representation made to both Rose Johansson and Gordon Johansson by the agent of Old Line Life about the standards and practices as to how old line worked. Other than the agency relationship, and I don't mean to demean its legal status in any way, but other than that tie, is there any evidence in the record that American General was aware of this additional notification requirement? Yes, Your Honor. What Mr. DeFebo testified, who was the agent, was that he had a good relationship with Old Line, that it was Old Line's, which is the original carrier that was at issue here, that Old Line always sent two notices that in terms of keeping the official address that the agent did that, and that they had an unequivocal policy of always giving any lapse notice to the agent. Counsel, I have a different question. If I understand the record correctly, Gordon knew that both policy number one and policy number two had lapsed, and in fact he had received an application to try to reinstate policy number two because it had lapsed, and he chose not to do it. But it doesn't, it just appeared to me that he had actual notice of the lapse of both policies and chose not to reinstate them all before he died. If I'm correct about the facts, why isn't that the end of things? And if I'm not, please correct my understanding. In terms of what Gordon Johansson learned and when, it is true that at some point he was sent an application for reinstatement. That means that you don't reinstate something that's in effect, correct? Well, yes, but Your Honor, here's the critical point. That there's no evidence that he received a timely notice of lapse that says you still have 30 days to get the policy in place. Well, the record has the notices of pending termination addressed to him. I'm sorry? The record contains a notice of pending termination that was addressed to him. At the Altamont Way address, which was a building that was half-completed. Mr. Johansson had terminal cancer and according to Rose Johansson, it was a building under construction. It was their dream house that they were going to in turn live in for a while and then sell. It was not habitable. The position you took in district court, I think, that is the position that the notice was sent to the wrong address, correct? That was the position, one of the positions you took in district court. Yes. Did you raise that on appeal? Is it in your brief? Yes, in the statements of facts. Can you tell me where that is? I'll look. Maybe you can do that on rebuttal. I don't want to stall your time here. Counsel. Do you want to continue with your comments and look that up during? Well, yes. I want to. I really. I think what's very important, Your Honor, is that there's a huge distinction between learning that your policy lapsed when there's still something you can do about it without having to take a physical and learning about it afterwards. And, in fact, that's exactly what happened in the Wells case. In the Wells case, the employee learned that, in fact, oh, well, your policy's lapsed. And they said, sure, go ahead. Reapply for insurance. Take a medical exam. And if, in fact, you pass the medical exam, we'll give you coverage. So he learned about the lapse, but he learned about it at a time that he no longer was able to maintain the insurance under his original medical condition. Well, let me ask you one other question about this address issue. I'm looking at Excerpt 979, which is signed by Mr. Johanson. It's a cash disbursement request. And it contains the same address that you're saying was not a valid address. It appeared to me, looking at that and also at a subsequent one, that that was filled out by him, as were the checks that went out. Correct. So if he's filling out that address, why is it wrong for the insurance company to send notices to that address? Because he maintained his driver's license and he maintained all of his bank and official notifications at the loop drive address. What happened was Mr. Johanson was building this large structure, which wasn't habitable. His cancer got to the point that he couldn't continue with the construction. And, in fact, they didn't have air conditioning or heating in that structure, so he wasn't there as often. So in terms of that borrowing, that took place years before the notices. Yeah, well, it said October of 2008 is the one that I'm looking at, and the notice on the first one went out just a month or so later. Okay. I mean, I guess our point, Your Honor, is in terms of the notices and the strict compliance that it's our position that they, under the unequivocal terms of the policy, were required to send out two notices, which they did not do. And, additionally, Mr. DeFebo was a backstop. The purpose of having an insurance agent receive this notice is he – you're talking about somebody who's very vulnerable here. This is somebody who's dying of cancer. And one of the reasons that Coates talks about strict construction is this is a quasi-public form of insurance. And, in fact, in this particular instance, Your Honor, this is a whole life policy. And unlike an auto insurance policy, where you write one check for 600 bucks and you know that that's the beginning, middle, and end of what you owe, in this particular case, the whole life policy builds up cash value. And how that cash value is built up is a very mysterious number because it involves interest rates, fees, and charges that the carrier has. And so you don't really know how much that cash value is unless the carrier calculates it for you. And, in fact, you don't have a termination of coverage as long as that cash value is enough to pay the premium. And, in fact, on policy one, Johansson said, hey, you don't need to be sending me notices anymore because I have a built-up cash value. They violated insurance code 500 because ultimately, in terms of what happened here, you have a huge disparity of knowledge that in terms of the insurance understanding exactly where they stand and where a policy is going to lapse, it's not like a normal policy. Counsel, you're down to less than a minute if you want to save some time for rebuttal and respond to Judge Hawkins' question when you have that opportunity. May it please the court, I'm Tom Fitzgibbon, I represent American General Life Insurance Company. I think the court has already honed in on the key issues in the case, that the facts are undisputed and that the facts show that Gordon Johansson was aware prior to his death that both policies had lapsed. To explain the... Is that enough actual knowledge if the method of notice is defective? The question here in this case... It's a yes or no question under California law? I don't think that that question is one that the statutes or cases address. It's a contractual question, Your Honor. So the answer is it depends on what the contract says. Mr. Plaintiff is arguing that there is a statutory issue here. There is not. The Martirosian case from the Ninth Circuit, which followed the Koch case and discussed it, said in the context of life insurance that there is not... In the context of the owner of a life insurance policy, there is not any sort of similar statutory issues relating to notice. There isn't any. There is now, after the recent statutory enactments that talked about what requirements the life insurance company has to do in terms of who has to get notice. There were concerns, the ones that were identified. Counsel was discussing the fact of agents and other people and Koch was dealing with that about assignments and there was a specific statute that was just enacted at the time of that case. Since then, the Martirosian case dealt with whether the owner versus the insured was to get notice. In this case, Gordon Johanson was the owner and the insured and he was the only one to get notice. So in Martirosian, the owner got the notice but one of the parties got the notice and not the other. It was a husband and a wife and they had separated and then the policy lapsed. And so the court found that there was no specific statute that required notice to anyone else other than in the policy. So in this case, because the statutes that have been enacted since by California that allow somebody to designate in writing someone else to get notice. There were discussions about whether Mr. DeFebo had the right under course of conduct and so forth. None of that was pleaded. There was no evidence of that. None of those things were before the district court. None of them have been raised on appeal. But in terms of the new statute that is there, it specifically says that if you tell the insurance company someone else is to get notice, they may do so. And in this case, the sole question is what does the contract say about who is to get notice? And the court was discussing with counsel who it was and it's very clear that it is the owner at his last known address. And Gordon Johanson was the person entitled to notice. He was the only person entitled to notice. The facts are undisputed that he received notice. And what happened... But it appeared to me from the documents that it's undisputed that the notice was sent and then there's this address question. So is it also undisputed that he actually received the notices? We believe that given the applicable standard that there is no evidence that they were not received. Gordon Johanson has passed away. He did not testify. The court specifically identified the reinstatement application which was over a year later. The key set of facts that apply here is the timeline. In 2008, Gordon Johanson, he had had cancer earlier but it was in remission. It was not an issue in 2008. He was building the home at Altamont Way. It's a large home. He took out all the money from his two life insurance policies to help build his home. That was a difficult time in the economy in 2008. He wasn't sick. He asked for all the money. He took it all out. He never paid another premium again. And it was all sent to that same address including the checks. He asked for it to go to that address. The company sent him a notice. They received mail back when they sent it to the 760 Loop Drive address. Their system received mail back. And then they looked up the correct address. They sent him a letter. It says, we've changed your address to 85 Altamont Way because the other one was returned to us. What had happened, the testimony of deponents were that they had rented out the Loop Drive house to someone else and they moved. They were living in the house as they were building it. They rented out the one on Loop Drive. So all their mail was changed. The bank statements, counsel suggested those. It's in the record. The Wells Fargo bank statements were sent to the Altamont Way address. And so the mail was sent to him. There was a letter that said, we've changed your address. That was the address that they used. They sent the notice of pending termination. That was the 30-day advance notice that the policy describes. The earlier notice, the premium reminder notice, that is something that comes out periodically. And it was sent out on Policy 2 every month for $750. And they paid it every month until June of 2008. Policy No. 1, in the year 2000, they specifically requested that notices not be sent because the policy was self-sustaining. At some point... You say they. This was Gordon, right? Mr. DeFeebo himself, on behalf of Gordon, sent a fax to the insurance company that said, please do not send any more bills because the policy is self-sustaining. That was never pleaded in the complaint. It was never raised at any time until the summer judgment motion. They suggested that perhaps that Section 500 was violated as the district court found it was not implicated because it was the insured who requested the notices not to be sent because the policy was paying for itself. Once he took out all the money, it didn't pay for itself, and they sent him the notice of pending termination. Those notices were sent, and then after the policies terminated, one in January of 2009, the other in March, they sent him the notice that indicated the policies lapsed. If you'd like to reinstate it, please contact us. So he got those because in June of 2010, over a year later, he called the insurance company. By then, he was sick. He was not sick when he took all the money out and started to use it on his house because if he was very sick, he would not have done that. He was not sick, and then he inquired about reinstatement, and at that point, he didn't pursue it. The reasons why he didn't pursue it, perhaps because he was sick, that's the logical inference, but there's no evidence of that. But he did not pursue it, and then he died in December of 2010. And the other issue was that there was never a claim submitted. There was a letter, and supposedly there was a phone call from Mr. DeFebo. The insurance company wrote back and said, you're not the right person. If Gordon has passed away, please let us know. And then the next item was the complaint in July of 2011. So in this instance, the key issue is not the statutory matters. It's simply the contract. And the court had pointed to the estate of cote. I wanted to briefly address that issue. That case was very limited, and it dealt with an issue of who was supposed to get notice. And in that case, the assignee, the contract itself, had a very specific provision that said the assignee has all rights under the policy except for a specific carve-out. And the court there looked at it and said, we believe the rights that are included among that bundle, one of them is to get notice of lapse. And they said, given that there was a statute that suggested that was how it was going to be in the future, this particular policy didn't apply to that one because the statute was prospective application only. So they said it makes more sense. We looked at the interpretation of the contract. Counsel cited the code section that talks about contractual interpretation in California. They want what's a reasonable expectation. In the cote case, they said it's reasonable for the assignee to assume that they're going to get notice because that's in the bundle of rights. Similarly, in this case, the issue is about what does the contract say. That's really the issue. So cote doesn't stand for any broader provision of law. There's not a single case involving life insurance that's been cited to the court that says strict construction applies in this context. The reason is because one is a first-party coverage and the other is a third-party coverage. All the other cases dealt with matters of liability insurance where they were going to be canceled for some reason. And so in those settings, the insured would not have a defense of a claim by a third party. A first-party coverage is a right that's owned solely by the owner of the policy. And so the distinction there is manifest. I mean, that's the concept that that's why there's no life insurance cases that say this is strictly construed. That isn't what is required. So the proper framework is instead that under the contract, each side has a set of obligations. And the main obligation of the insured is to pay the premiums to keep the policy in force. We cited a case from long ago that's never been overruled that says that's the principal obligation. And the Stewart case that also mentioned that that said an insured cannot put its head in the sand if there's a notice question and then just say, well, the notice was defective. I'm going to never pay a premium again and the policy is going to remain in force. It said that isn't going to be the result. It didn't need to address it in that case but there are no cases cited that suggest anything to the effect as proposed by plaintiff here that the policy would not be invalidated if the premiums weren't paid. The analysis is did any failure by the insurance company excuse some obligation to pay a premium by the plaintiff? That's the proper framework. Were they excused for some reason? They didn't plead that in their complaint. They never raised it below. They never brought it to this Court's attention. That's the proper question is was there some excuse on the part of plaintiff to pay premium? The answer was no. They didn't plead it and there wasn't any. The one that they've suggested is well, if we didn't pay, if we didn't send the notice they might be excused. That might be true if it was a 30-day situation. There are factual scenarios in which when it's pleaded and fully before the Court that they will say yes, in some circumstances a plaintiff is excused from paying premium. This is not that case. So that didn't happen in this instance. The insurance company did what it was supposed to do under the contract and the policy lapsed and it's unfortunate but that's where we are today. The insurance company gave the notices it said it would give. Thank you. Mr. Felcher, you have a little bit of time remaining. Is actual notice enough? No. Counsel said actual notice is not enough. It depends on what the contract says. What does this contract say? We will mail a premium reminder notice and at least 30-day advance written notice of lapse to the owner's last known address. The only two documents that they put in front of the District Court and this Court for policy one was a notice of lapse sent a day after the purported lapse. There was only one document. So in terms of agreeing with them what does the contract say? It makes no difference if you are holding a lease and you know you're in default if you don't get the three-day notice. They didn't give the notice that they were required to give. Additionally there was another notice that was required for both policies. Insurance Code section 500 says if there has been a pattern of sending a regular premium notice and that is discontinued the carrier shall give notice. That didn't happen here. Your colleague suggested there's no evidence of that pattern or practice. That wasn't before the record shows that there was an ongoing pattern on policy two of premium notices according to their evidence, Mr. DeFebo said, hey, please stop sending them. They don't dispute that there was this ongoing pattern of sending the premium notices and they don't dispute that they stopped. They said and they argued to the District Court, hey, the reason we stopped is he asked for us to do that. Therefore, we don't have to send the insurance code section 500. So nobody disputed the facts that there had been a pattern and a continuum of premium notices going out every month on policy two that stopped. And our point is under the Stewart case which he cites, the Stewart case says that there was a triable issue of fact on pattern and practice. Counsel, you have exceeded your time. And the final comment If you have an answer to Judge Hawkins I do. In my original brief I addressed the fact that the notices were sent to the new Alton Mount Way address which was not the address on page seven of my opening brief. I extensively discuss in my reply brief at page six our arguments about how Mr. DeFebo was the keeper of the official address and that Page seven, Counsel is your statement of facts. Correct. And in the reply we elaborate on that at six, seven, and eight. Thank you, Counsel. The case just argued is submitted. We appreciate both of your arguments and we will be adjourned for this morning's session.
judges: Sedwick, Hawkins, Graber